ABRAHAM McHOSE, Respondent, *v.* SOUTH ST. LOUIS FIRE INSURANCE COMPANY, Appellant.

### December 4, 1877.

1. One in possession of premises in common with another can maintain the action of forcible entry and detainer when unlawfully turned out by his co-tenant.

2. In such a case the writ of restitution should not issue to restore plaintiff to the possession of the whole estate, but the defendant should be removed from the exclusive possession and the plaintiff put in joint possession with his co-tenant.

3. The form of writ given in the Missouri statutes is not obligatory, and, where the claimant and defendant are co-tenants, or entitled to joint possession, must be modified to suit the appropriate judgment.

4. That the claim, in such a case, does not correctly describe the character of the possession to which plaintiff is entitled is not necessarily fatal to a recovery.

5 A mere licensee, having no possession, cannot maintain forcible entry and detainer.

6. Where a servant has common possession with his employer, the fact that he was a servant gives his employer no right to eject him at the expiration of the term of service.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

T. Z. BLAKEMAN, for appellant, cited: *King* v. *Dickerman*, 11 Gray, 480.

JECKO & HOSPES, for respondent, cited: *Presberry* v. *Presberry*, 13 Allen, 281; *Mason* v. *Finch*, 1 Scam. 495; *Childs* v. *Connelly*, 9 Dana, 385.

BAKEWELL, J., delivered the opinion of the court.

This was an action for unlawful detainer. Plaintiff com-

plains that on or about March 10th he was in lawful possession of a front room on the second floor of a building on Carondelet Avenue and Carroll Street, and that on that date defendants put him out by force, and carried off his furniture, and have ever since retained possession of the room.    There was a verdict and judgment for plaintiff. On trial anew in the Circuit Court, a jury was waived, and there was a finding and judgment for plaintiff; from which defendant appeals.

Plaintiff rested his case upon his own testimony, which was as follows :

"I was in possession of the premises sued for on the 10th day of March, 1876.   I had four rooms originally. About the 10th of March, 1876, I occupied one room.    I was an insurance agent, and carried on fire insurance there up to that time.   I had occupied the office there since 1871. I had property in the room I occupied ; I had a desk, carpet, stove, and chairs, and a safe.   On the 10th of March I received a notice from the defendant to give up possession. On the next morning, when I returned there, I found that all my things had been taken out into the hall.   I tried the door of the front office, the one I had occupied, and found it locked.   The lock to the door had been taken off and a new one put on, so that my key which I had did not fit.   I left the room on the evening of the day before.   I locked the door with my key.   No one was in the room when I left.   I then entered through the rear office, and was told by the secretary that the insurance company had put my things out.   I found the secretary of the defendant in possession, and in my room, and he told me that the defendant had ordered him to put my things out, and he had done so ; that I had no right in the room, and could not come there any more ; that he had had the lock changed to prevent my access to the room ; that he had done this at the request of the defendant.    After that time the defendant used the room as its office.   I have never had possession since.   The defendant has had the room ever since, and has it now.

Before the defendant notified me to leave, they had sent me two bills for rent. I took an office in the next room, a few days after I was put out. My furniture was damaged to the amount of fifty dollars. The room I occupied was worth twenty dollars per month. It has been worth that since the defendant took possession, and it is worth it now. I have been in the real estate business, and have had the renting of property, and am acquainted with the rental value of such a place."

Cross-examination: "I was in the employment of the defendant on the 10th day of March, 1876. (Contract shown witness.) I was serving under this agreement on the 10th day of March, 1876. I refused to accept the bill for rent sent to me. It was sent some time in February. I don't remember that the company had notified me that I was no longer in their employ, and that I must pay rent if I occupied their office any longer. The company occupied a part of my office and a room in the rear. I was to occupy a desk-room in the company's front office. Before the company moved in I had occupied three rooms. Mr. Heimentz was the landlord. I rented of him before the company moved in. I had not paid any rent since the company moved in, in June, 1875. I told Mr. Heimentz that I was to remain there, rent free, after the company moved in. This conversation was about a week or month before the company moved in. I never made any agreement about the office with the defendant. The only agreement that I had about occupying the office was with Mr. Heimentz. I never agreed to give up possession to the company. The company put up two curtains with its name on them in the front office. It put up signs on the front office. I had never worked for the defendant before they moved into the offices which I had occupied."

Plaintiff here rested his case.

To this testimony defendant demurred as not sufficient to support a recovery. The demurrer was overruled.

Defendant then introduced testimony to the effect that

the defendant, with plaintiff's consent, rented from the owner of the building the premises in controversy and two adjoining rooms, formerly occupied by plaintiff, and that defendant moved in, under this lease, about nine months before the date mentioned in the complaint, and has ever since been in possession of all the rooms; that, when the company moved in, McHose became an employee of the company, and remained in their service until discharged, a few weeks before the date of the alleged trespass; that defendant was willing that McHose should remain in the room if he would pay rent, which he refused to do, and was then notified to move his furniture, which he refused to do; whereupon it was put out. The company had furniture, a double desk, chairs, and window-curtains, in the front office, which communicated with the other rooms. McHose occupied a desk there, working for the company. The company occupied the front room as a part of its offices, and had McHose and other employees working there. It was agreed that McHose might have desk-room, and keep his own desk, as long as he remained in the employ of the company.

The following instructions, asked for defendant, were refused:

"2. If the court, sitting as a jury, believes that the plaintiff, on the 10th day of March, 1876, was not in the exclusive possession of the premises claimed, the plaintiff cannot recover.

"3. The court instructs that if it believes from the evidence that the defendant had rented, used, and occupied the premises in question as its office and place of business, and that defendant so used and occupied said premises on the 10th day of March, 1876, the plaintiff cannot recover.

"4. If the court believes from the evidence that the plaintiff had been in the service of the defendant, and had been permitted by the defendant to use his own desk while laboring for the defendant, in defendant's office, and that afterwards the defendant discharged the plaintiff from its

service and removed plaintiff's desk from its office, the court will find for the defendant."

The first question to be determined, in disposing of this case, is whether one in possession of premises in common with another can maintain the action of forcibly entry and detainer when unlawfully turned out by his co-tenant. On this point we cannot do better than to quote the language of the learned judge delivering the opinion of the Supreme Court of Massachusetts in *Presberry* v. *Presberry*, 13 Allen, 284:

" However the rule may be where the process is brought by a lessor to evict a tenant for rent in arrear, or on the ground that his estate is determined, we are fully satisfied, after looking over the authorities touching proceedings in forcible entry and detainer, that the complaint may well be supported where a tenant in common is evicted, or held out violently and with a strong hand, by his co-tenant. The existing statute concerning forcible entry and detainer is substantially a reënactment of the statute of 1784, which was preceded by a colonial statute of similar import. 13 Wm. III. c. 71. The provisions of both these last-named acts, with some modifications, were taken from the statutes of England on the same subject, more especially from 8 Hen. VI. c. 9 ; and, so far as they made provision for the restitution or ' reseizing ' of land or tenements forcibly entered or detained, they did not essentially differ therefrom. Under these statute provisions it was early held by the English courts that a joint tenant, or a tenant in common, might ' offend against the purport of them either by forcibly ejecting or forcibly holding out his companion ; for, although the entry of such tenant be lawful, yet the lawfulness of his entry in no way excuses the violence or lessens the injury done to his companion.' Hawk. P. C. 64, sec. 33 ; Dalt. 315 ; Bac. Abr., title, Forcible Entry and Detainer. The leading case in which this point was distinctly raised and decided is *King* v. *Marrow*, Ca. *temp.* H. 174, where the

previous cases are cited.   And it seems to have been uniformly held that, by the true interpretation of the statutes in England, restitution of the premises might be awarded for one joint tenant, or tenant in common, against the other. These adjudications, having been made prior to the separation from the mother country, and in relation to legislative provisions which were subsequently enacted by the General Court of the Colony, must be deemed to be an authoritative exposition of the meaning of the statute, and to have been adopted and acted upon when similar statutes were passed by the Colonial Legislature, more especially as they seem to be, in themselves, just and reasonable.   Upon careful consideration, we are unable to see any good ground for refusing to yield an assent to them.

" Of course, in such cases the remedy must be made to conform to the right or title of the party.   The writ of restitution should not issue to restore the plaintiff to the possession of the whole estate, but only to such portion as it appeared on the·trial he was entitled to possess and enjoy. Nor would there be any practical difficulty in enforcing such process.   The defendant could be removed by the officer from the exclusive possession of the premises, and the plaintiff put into joint possession with his co-tenant.''

So, in Illinois, under their statute, it is held that one joint tenant, or tenant in common, may maintain an action of forcible entry and detainer against his co-tenant.   *Mason* v. *Finch*, 1 Scam. 495.   And in Kentucky it is also held (*Robertson* v. *Robertson*, 2 B. Mon. 237 ; *Taylor* v. *White*, 1 T. B. Mon. 37) that where one parcener forcibly keeps his coparcener out, the action will lie, but judgment of restitution can only be to be restored to the joint, not the exclusive, possession.

Our statute contains provisions which are not explicitly set forth in the statutes under which the decisions which we have cited were made.   Thus, our law expressly provides the form of the judgment, — "that complainant have resti-

tion of the premises found to have been unlawfully detained,"— and, after saying that the execution must conform to the judgment, gives a form of execution which the officer may use. This form commands the officer to "take with him the power of the county, if necessary, and to cause the said defendant to be forthwith removed from the premises." Wag. Stat. 645, secs. 22, 23. The object of all these statutes is, however, the same; and we see no essential difference between them which should render the rulings in Massachusetts, Illinois, and Kentucky inapplicable here. The form of writ given in the Missouri statutes is not obligatory, and, of course, must be modified to suit the appropriate judgment where the claimant and defendant are co-tenants, or entitled to joint possession. There seems, therefore, no sufficient reason why this simple and speedy remedy should be denied in Missouri to a tenant in common, or one having a common possession, who has been forcibly ejected, or who is forcibly kept out of enjoyment of the common estate; and we think that the court committed no error in overruling the second instruction for defendant.

The claim in this case did not correctly describe the character of the possession to which the plaintiff says he is entitled. This would not be fatal to a recovery; but the finding and judgment in the case were, in this respect, wholly unsupported by the proof. It is not pretended that plaintiff was entitled to the exclusive possession of these premises; and clearly the judgment, in this respect, is wrong. The judgment could not be for any thing more than an undivided interest. If there be any legal right to restitution in this case, it cannot be, as adjudged below, a right of exclusive possession, but only to an occupancy in conjunction with defendant; for, from such an occupancy only, on his own showing, was plaintiff driven. As the evidence did not authorize the finding and judgment for restitution of the entire and exclusive possession, the judgment must, of course, be reversed. 2 B. Mon. 239; *Eads* v. *Rucker*, 2 Dana, 112.

When the testimony of plaintiff is carefully examined, it becomes questionable whether it will support any finding for plaintiff, and whether the instruction in the nature of a demurrer to the evidence, at the close of plaintiff's case, should not have been given. He says he was in possession, of course; but all such statements are not evidence; they are conclusions of law, and the question is, Do the facts sworn to warrant them? He says that he occupied desk-room in the company's front office; that he was in the company's employ; that he rented from Heimentz before the company went in; that he had paid no rent since the company went in; and that he then told Heimentz that he was to remain there, rent free, after the company moved in. All this looks as if McHose assented to the company leasing from Heimentz, gave up his position as tenant of Heimentz, and was in by a mere license from the company. The only agreement he had about occupying the office was, he says, with Heimentz; and it consisted, he says, of his statement to Heimentz that after the company moved in he was to remain there rent free. He does not say that Heimentz assented to this, but he does seem to imply that it was understood between him and Heimentz that the company was to move into the front room as tenant of Heimentz. Upon this question, however, it is not necessary for us to pass, as the cause must be remanded for a new trial for the reasons stated.

It can hardly be necessary to say that a mere license cannot be enforced by any process known to the law; that it passes no interest, and is a mere authority to do some act or acts in or about the premises; and that, if plaintiff was a mere licensee of defendant, there was no common possession, or possession of any kind, by him, and this action will not lie. If, however, McHose had a right to the exclusive possession of the room, and permitted defendant to occupy the room with him, for the purposes of their business, the fact that he was their servant would give them no right to

eject him from the room at the expiration of their employ-
ment.   The fourth instruction for defendant was, therefore,
properly refused.

The judgment of the Circuit Court is reversed, and the
cause remanded.   All the judges concur